Mr. Chief Justice Bingham
delivered the opinion of the court:
The matter of Henry Standiford comes before the court on the writ of habeas corpus. The petitioner shows by his petition that he is a citizen of the United States, a resident of the District of Columbia, and has been for the past thirteen years engaged in business as a druggist or apothecary in said District, and is and has always been duly licensed to carry on the said business.
That theretofore, “to wit: on the 18th instant, the petitioner was arrested on a warrant issued from the police court of said District for alleged violation of law, to wit, by selling cigars on the 17th day of April, instant, the same being the Sabbath day, contrary to the provisions of an alleged ordinance of the late corporation of Washington, passed in November or December, 1864, as will appear by reference to a copy of the complaint annexed.” That thereafter he was taken before the judge of the police court of the District of Columbia, and convicted and sentenced to pay a fine of f 20 or be committed to the custody of the superintendent of the Washington asylum, in default of thé payment of such fine. That he is now under arrest and *555 unlawfully deprived of his liberty by the superintendent of the said asylum or those acting in authority under him, or under the aforesaid commitment.
The petitioner avers that the alleged ordinance of November or December, 1864, under which he was prosecuted, is void and of no effect, for the reason that the same did not receive the sanction of the mayor, and that it does not appear from the minutes of the legislative branch of the late corporation of Washington that the said ordinance was ever sent to the mayor, as required by law, for his approval.
The petitioner alleges other grounds upon which he claims his arrest and detention to be illegal, but it is unnecessary to recite them.
The return of the respondent, Walter H. Stoutenburgh, the intendant of the Washington asylum, admits the arrest, trial, conviction and detention of the petitioner, and, with other matters, sets forth the alleged ordinance which, it is in substance averred, was duly passed by the board of aider-men and common council of the late corporation of Washington, and that the same was duly sent to and placed in the hands of the mayor, and that the mayor did not, within five days after receiving the same, or at any time, return it with his disapproval, either in writing or otherwise, and that said boards of aldermen and common council did not by their adjournment prevent the return of the said ordinance within five days.
It is not alleged in the return that two-thirds of both boards on reconsideration ever agreed to pass the said alleged ordinance after it had been sent to the mayor; nor is it averred that the mayor ever, in any sense, approved of the ordinance.
In 1820 Congress passed an act, entitled “An Act to Incorporate the Inhabitants of the City of Washington and to Eepeal all Acts Heretofore Passed for that Purpose,” whereby, after providing for the office of mayor and a board of aider-men and board of common council, it was enacted, among other things, that “All ordinances or acts passed by the two boards shall be sent to the mayor for his approbation, and *556 when approved by him shall be obligatory as such. But if the mayor shall not approve of any ordinance or act so sent to him, he shall return the same within five days, with his reasons in writing therefor; and if two-thirds of both boards, on reconsideration thereof, agree to pass the same, it shall be in force in like manner as if he had approved it; but if the two boards shall, by their adjournment, prevent its return, the same shall not be obligatory.”
Did the ordinance in question, by virtue of the proceedings thus disclosed and conceded by the pleadings in this case, ever become a valid enactment? It is very ingeniously argued that the effect of the mayor’s neither approving nor disapproving the ordinance was to render it a legal enactment; that, as the Constitution of the United States provides if any bill shall not be returned by the President within ten days, Sundays excepted, after it shall have been presented to him, the same shall be a jlaw in like manner as if he had signed it, unless the Congress, by its adjournment, prevents its return, in which case it shall not be a law; and, as most of the States which have invested the governor with power to veto bills passed by the legislature have a similar constitutional provision as to the non-action of the governor, that Congress must be presumed to have intended the same consequence to follow the failure of the mayor to approve or disapprove an ordinance sent to him by the board of aldermen and common council within the time limited by law. Is this the proper interpretation to be given to it?
The omission from the charter of a clause such as is contained in the Constitution of the United States, and in the constitutions of many of the States at the time it was granted by Congress cannot be presumed to have been an accident. Congress created a legislative authority, and provided that it should be in two boards and the mayor, and distinctly defined the part he should take in the enactment of laws for the municipality. The action of the mayor in this behalf can no more be dispensed with than could that of one of .the boards. The power granted to each must be exer *557 cised, and the failure of either to do so defeats the proposed enactment.
To us it is plain that Congress expected the mayor to perform the duties assigned to him. Congress said he should approve the ordinance or within five days return it with his reasons therefor in writing. The performance of this duty was just as obligatory on the mayor as that of any, the execution of which he was enjoined by the charter to perform; and naturally he would no more be presumed, in advance, to be inclined to disregard this particular duty than he would other duties pertaining to his office.
The power granted to a municipality to enact ordinances is special and must be strictly construed. Applying this well established rule of construction to the language employed by Congress in granting power to the late corporation of the city of Washington to enact ordinances, there is little difficulty in determining that an ordinance sent to the mayor by the boards for his approval, but in reference to which he took no action whatever, and in reference to which the boards never thereafter took action, did not thereby decome a law of the city.
The respondent, in his return, has recited a number of facts and circumstances tending to show that, after the date at which this proposed ordinance was so sent to the mayor, various officers of the city by their acts indicated a belief that this ordinance was a valid enactment. Having determined that the action of the mayor, or rather his failure to act in conjunction with the legislative boards, did not have the effect to enact the proposed ordinance into a law, it will hardly be seriously contended that the opinions or the views of any member of the city government or any number of officials could have any such effect; nor indeed could any act of theirs short of the proper action of the law making power de, novo give this result.
I will call attention to one point which I have thus far overlooked. It has been argued that no particular form of approval was prescribed by Congress, and that we might infer from what the mayor did and what he omitted to do, *558 that he did approve of the ordinance. We think that this is a point not well taken; that the law implied there should be some positive action upon the part of the mayor in the way of an approval of the law, and that that action necessarily must be in writing, and must be a part of the record which shows to the world that this ordinance has become a law, and is binding upon the citizens of the corporation.
Arriving at the conclusion that the .alleged ordinance never was enacted into a law, the court has found it unnecessary to determine the other questions presented by the petitioner as grounds for his discharge, and the case will be dismissed and the defendant discharged.
There are two cases, I believe, before the court, in which it is stated that the questions involved are precisely the same as in the case in which action has just been pronounced, the case of George W. Cochran and one ether,, and the same judgment will be rendered in those cases,
Mr. H. E. Davis : I understand, then, that even if 1 averred most positively the approval by the mayor, and could not establish the approval to be in writing, it would be wholly futile ?
The Chief Justice: Precisely.
Mr. Justice James: This statute shows of itself, when all parts of it are construed together, that everything was to be in writing, the ordinance and'the approval; that there was but one way for the mayor to do, and that was to give his reasons in writing. Taking everything together, we think there is no doubt that that approval must be of record..